TIMOTHY COURCHAINE
United States Attorney
District of Arizona
MATTHEW WILLIAMS
Assistant United States Attorney
Arizona State Bar No. 029059
Two Renaissance Square
40 N. Central Ave., Suite 1800
Phoenix, Arizona 85004
Telephone: 602-514-7500
Email: Matthew.Williams3@usdoj.gov
Attorneys for Plaintiff

LORINDA I. LARYEA
Acting Chief, Fraud Section
United States Department of Justice
JAMES V. HAYES
Assistant Chief
SARAH E. EDWARDS
LAUREN R. RANDELL
Trial Attorneys
Criminal Division, Fraud Section
United States Department of Justice
1400 New York Avenue
Washington, DC 20005
Email: James.Hayes@usdoj.gov
Email: Sarah.Edwards@usdoj.gov
Email: Lauren.Randell@usdoj.gov
Telephone: 202-774-4276
Attorneys for Plaintiff

FILED ✓    LODGED ___
RECEIVED ___    COPY ___

JUN 11 2025

CLERK U S DISTRICT COURT
DISTRICT OF ARIZONA
BY _____ DEPUTY

REDACTED FOR PUBLIC DISCLOSURE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>    Plaintiff,<br><br>vs.<br><br>Cleesther Davenport,<br><br>    Defendant. | No. **CR-25-00883-PHX-MTL (ASB)**<br><br>**INDICTMENT**<br><br>VIO: 18 U.S.C. § 371<br>(Conspiracy)<br>Count 1<br><br>42 U.S.C. § 1320a-7b(b)(1)(A)<br>(Soliciting and Receiving Health Care Kickbacks)<br>Counts 2–6<br><br>18 U.S.C. § 981<br>18 U.S.C. § 982<br>21 U.S.C. § 853<br>28 U.S.C. § 2461(c)<br>Forfeiture Allegations |

**THE GRAND JURY CHARGES:**

At all times material to this indictment, within the District of Arizona and elsewhere:

### INTRODUCTION

1. Between in or around September 2022 and in or around March 2023, Defendant CLEESTHER DAVENPORT, acting primarily though her company, Davenport House LLC ("Davenport House"), conspired with others to solicit, receive, offer, and pay illegal kickbacks. As a part of the scheme, payments made by the Arizona Health Care Cost Containment System ("AHCCCS") to Tusa Integrated Clinic, LLC ("TUSA"), an outpatient treatment center that purportedly provided addiction treatment services, were kicked back to Defendant and others in exchange for Defendant and others referring individuals under their control to TUSA. In total, between in or around October 2022 and in or around March 2023, Defendant received approximately $739,000 in kickbacks through this scheme.

### Background on the Arizona Health Care Cost Containment System

2. AHCCCS was Arizona's Medicaid agency that offered health care programs to Arizona residents. AHCCCS contracted with several health plans to provide covered services and worked with medical providers, such as doctors, hospitals, pharmacies, specialists, and counselors, to provide care for AHCCCS members. Covered services included, among other services, behavioral health counseling services, such as counseling and substance abuse treatment.

3. AHCCCS administered Medicaid health care programs to Arizona residents who met certain income requirements. The federal government paid Arizona for the majority of AHCCCS Medicaid program expenditures. Among other programs and plans, AHCCCS provided care through the American Indian Health Program ("AIHP"), through which AHCCCS-enrolled Native Americans could receive health care services, including preventive and behavioral health care services, on a fee-for-service basis.

4. AHCCCS was a "health care benefit program," as defined in Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined in Title 42, United States Code, Section 1320a-7b(f).

5. AHCCCS-covered services, including behavioral health services, must have been medically necessary, cost effective, federally reimbursable, and state reimbursable. Arizona Administrative Code R9-22-202.

6. Outpatient behavioral health services were behavioral health services provided by an outpatient treatment center ("OTC"). An OTC was a health care institution without inpatient beds that provided physical health services or behavioral health services for the diagnosis and treatment of patients. Arizona Administrative Code R9-10-101.

7. OTC services included therapy in the form of intensive outpatient services ("IOP") and outpatient services ("OP"). IOP and OP patients attended facilities on an ongoing basis where treatment was rendered, generally in the form of group and individual therapy sessions. The distinction between the two different treatment plans related to, among other things, the amount of therapy time on a daily or weekly basis.

### Related Entities and Individuals

8. Davenport House was a limited liability company formed in June 2021. Defendant CLEESTHER DAVENPORT operated Davenport House to purportedly provide housing to individuals enrolled in AHCCCS-funded health care plans, including AIHP. Davenport House's sole source of revenue was kickbacks from OTCs that purportedly provided addiction treatment services to Davenport House residents. Davenport House maintained a primary bank account ending in 4821 at Financial Institution-1 ("Davenport House Account"). Although Financial Institution-1 records show that Defendant's mother was the signatory on the Davenport House Account, Defendant was its true owner and controlled the funds received therein.

9. Safety Nest LLC ("Safety Nest") was a limited liability company formed in Arizona on or about June 5, 2021. Defendant was not named on the organizational documents of Safety Nest, which instead named multiple individuals, including one or

more relatives of Defendant. However, Defendant operated the company in 2023 and filed or caused to be filed Articles of Amendment in February 2023 that made her a member. Safety Nest operated as an OTC billing AHCCCS for addiction treatment services purportedly provided in early-to-mid 2023.

10. TUSA was organized in Arizona on or about May 20, 2022, and was licensed as an OTC effective on or about June 28, 2022. One of the corporate bank accounts maintained by TUSA during the relevant time period was at Financial Institution-2, ending in 2208 ("Tusa Account"). TUSA also made payments through third-party payroll entity Payment Processor-1 via an account it held ("Payment Processor-1 Account"). Rita Ntusa Anagho ("Anagho") was the owner and operator of TUSA. Defendant CLEESTHER DAVENPORT was employed in an office role at TUSA from approximately November to December 2022.

## COUNT 1
**Conspiracy to Defraud the United States**
**(18 U.S.C. § 371)**

11. The factual allegations above are incorporated for Count 1.

12. Beginning at a time unknown to the grand jury, but at least as early as in or around September 2022, and continuing through in or around March 2023, in the District of Arizona and elsewhere, Defendant CLEESTHER DAVENPORT, Anagho, and others known and unknown to the grand jury, did knowingly and willfully agree and conspire:

    a. To defraud the United States by cheating the United States government or any of its departments and agencies out of money and property, and by impairing, impeding, obstructing, and defeating through deceitful and dishonest means, the lawful government functions of AHCCCS, an agency of the United States, in its management of Arizona Medicaid;

    b. To solicit and receive any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, in return for referring one or more individuals, to wit, Arizona Medicaid beneficiaries, for the

furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, AHCCCS, contrary to Title 42, United States Code, Section 1320a-7b(b)(1)(A); and

  c. To offer and pay any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind, to one or more persons to induce such persons to refer one or more individuals, to wit, Arizona Medicaid beneficiaries, for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part under a Federal health care program, that is, AHCCCS, contrary to Title 42, United States Code, Section 1320a-7b(b)(2)(A).

**Purpose of the Conspiracy**

13. It was a purpose of the conspiracy for Defendant, Anagho, and others to unjustly enrich themselves by, among other things: (a) offering, paying, soliciting, and receiving illegal kickbacks and bribes in exchange for referring patients from Davenport House and other residences to TUSA and other OTCs for purported treatment billed to AHCCCS; (b) submitting and causing the submission of false and fraudulent claims to AHCCCS for addiction treatment services; (c) concealing the submission of false and fraudulent claims to AHCCCS, and the receipt and transfer of fraud proceeds; and (d) diverting the fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

**Manner and Means of the Conspiracy and Scheme**

14. The manner and means used by Defendant, Anagho, and others, individually and through the entities described above, to effect the purpose of the conspiracy included the following:

  a. CLEESTHER DAVENPORT operated and controlled Davenport House, a company that recruited and purported to provide housing to individuals with AHCCCS-funded health care coverage.

b. CLEESTHER DAVENPORT operated and controlled Safety Nest, an OTC, in early 2023.

c. CLEESTHER DAVENPORT controlled to which OTC individuals from Davenport House were referred and attended, including Safety Nest.

d. Anagho operated and controlled TUSA, an OTC that purportedly provided addiction treatment services for individuals suffering from alcohol and drug addiction.

e. CLEESTHER DAVENPORT and others solicited and received, and Anagho and others offered and paid, illegal kickbacks and bribes in exchange for referring patients from Davenport House and other residences to TUSA and other OTCs for purported treatment billed to AHCCCS.

f. CLEESTHER DAVENPORT and others solicited and received, and Anagho and others offered and paid, illegal kickbacks and bribes that varied based on the volume and value of the referred patients, including higher payments for the referral of patients with AIHP insurance compared to patients with other plans because the reimbursement from AHCCCS for these patients was generally higher.

g. CLEESTHER DAVENPORT, Anagho, and others concealed, and attempted to conceal, the nature of the kickback payments by characterizing them as payments for room and board for the individuals undergoing substance abuse treatment, when in fact the kickback payments far exceeded the actual cost of room and board and were in reality payments in exchange for the referral of patients to TUSA and other OTCs.

h. TUSA billed AHCCCS for more services than were actually provided to patients referred by CLEESTHER DAVENPORT to TUSA in exchange for illegal kickbacks, including services that were not provided at all, were not provided as billed, were not provided by qualified personnel, were so substandard that they failed to serve a treatment purpose, were not used or integrated into any treatment plan, and/or were medically unnecessary.

i. TUSA billed AHCCCS approximately $1.83 million for services purportedly provided to patients referred by CLEESTHER DAVENPORT to TUSA in exchange for illegal kickbacks, and AHCCCS paid TUSA approximately $1.58 million for those claimed services.

j. Between in or around October 2022 and in or around March 2023, Anagho, primarily through TUSA, paid CLEESTHER DAVENPORT, through Davenport House, approximately $739,000 in kickbacks for referrals.

**Overt Acts of the Conspiracy**

15. In furtherance of the conspiracy, and to effect the objects of the conspiracy, Defendant, Anagho, and their co-conspirators committed or caused to be committed various overt acts in the District of Arizona and elsewhere, including but not limited to the following:

a. On or about October 14, 2022, CLEESTHER DAVENPORT submitted or caused to be submitted one or more documents labeled "invoice" "000-1" to TUSA, which in total requested the payment of $11,200 related to one or more Davenport House clients.

b. On or about October 17, 2022, CLEESTHER DAVENPORT solicited and received from Anagho $11,200, wired from the Tusa Account, to the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

c. On or about October 21, 2022, CLEESTHER DAVENPORT submitted or caused to be submitted one or more documents labeled "invoice" "0002" to TUSA, which in total requested the payment of $14,000 related to one or more Davenport House clients.

d. On or about October 24, 2022, CLEESTHER DAVENPORT solicited and received from Anagho $14,000, wired from the Tusa Account, to the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

  e. In or around December 2022, CLEESTHER DAVENPORT solicited and received from Anagho $70,100, via the Payment Processor-1 Account, into the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

  f. In or around December 2022, CLEESTHER DAVENPORT solicited and received from Anagho $18,900, via the Payment Processor-1 Account, into the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

  g. In or around February 2023, CLEESTHER DAVENPORT solicited and received from Anagho and TUSA $104,700, via the Payment Processor-1 Account, into the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

  h. In or around March 2023, CLEESTHER DAVENPORT solicited and received from Anagho and TUSA $107,500, via the Payment Processor-1 Account, into the Davenport House Account. This payment was an illegal kickback paid in exchange for patient referrals to TUSA.

All in violation of 18 U.S.C. § 371.

### COUNTS 2–6
### Soliciting and Receiving Health Care Kickbacks
### (42 U.S.C. § 1320a-7b(b)(1)(A))

16. The factual allegations above are incorporated for Counts 2-6.

17. Between at least as early as September 2022, and continuing through at least as late as March 2023, in the District of Arizona and elsewhere, Defendant CLEESTHER DAVENPORT did knowingly and willfully solicit and receive, and cause to be solicited and received, any remuneration, including kickbacks and bribes, directly and indirectly, in cash and in kind, in exchange for Defendant referring patients to TUSA for treatment billed

to and paid by AHCCCS, with each instance serving as a separate Indictment count, as set forth below:

| Count | Approx. Date | Approx. Amount | Originating Account | Receiving Account |
|---|---|---|---|---|
| 2 | 10/17/2022 | $11,200 | Tusa Account | Davenport House Account |
| 3 | 10/24/2022 | $14,000 | Tusa Account | Davenport House Account |
| 4 | 12/13/2022 | $70,100 | Payment Processor-1 Account | Davenport House Account |
| 5 | 2/6/2023 | $104,700 | Payment Processor-1 Account | Davenport House Account |
| 6 | 3/8/2023 | $107,500 | Payment Processor-1 Account | Davenport House Account |

Each in violation of 42 U.S.C. §§ 1320a-7b(b)(1)(A).

**FORFEITURE ALLEGATIONS**

18. The factual allegations above are incorporated for forfeiture. The grand jury further realleges and incorporates the allegations of Counts 1 through 6 of this indictment, which are incorporated by reference as though fully set forth herein.

19. Pursuant to 18 U.S.C. §§ 981 and 982, 21 U.S.C. § 853, and 28 U.S.C. 2461(c), upon conviction of one or more of the offenses alleged in counts 1 through 6 above, Defendant CLEESTHER DAVENPORT shall forfeit to the United States all right, title, and interest in any and all property, real or personal, involved in such offense(s), or in any property traceable to such property involved in the offense(s), including the following: (a) all money or other property that was the subject of each transaction or transfer in violation of a statute listed in 18 U.S.C. § 982; (b) all other property constituting proceeds obtained as a result of those violations; and (c) all property used in any manner or part to commit or to facilitate the commission of those violations. Such property includes, but is not limited to, a sum of money equal to at least $739,000 in U.S. currency, representing the amount of proceeds involved in the offenses.

20. If any of the forfeitable property, as a result of any act or omission by any Defendant,

    a.    cannot be located upon the exercise of due diligence,

    b.    has been transferred, sold to, or deposited with a third party,

    c.    has been placed beyond the jurisdiction of the court,

    d.    had been substantially diminished in value, or

    e.    has been commingled with other property and cannot be divided without difficulty,

it is the intent of the United States to seek forfeiture of any other property of that Defendant up to the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL

        //s//
FOREPERSON OF THE GRAND JURY
Date: June 11, 2025

TIMOTHY COURCHAINE
United States Attorney
District of Arizona

  //s//
MATTHEW WILLIAMS
Assistant U.S. Attorney

LORINDA I. LARYEA
Acting Chief, Fraud Section
United States Department of Justice

  //s//
JAMES V. HAYES
Assistant Chief
SARAH E. EDWARDS
LAUREN R. RANDELL
Trial Attorneys